# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARK EDWARD STINNETT**, | Case No. 3:14-cv-906-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**<br>**Acting Commissioner of Social Security**, | |
| Defendant. | |

Tim Wilborn, Wilborn Law Office, P.C., P.O. Box 370578, Las Vegas, NV 89137. Attorney for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Alexis L. Toma, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mark Stinnett seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits. For the following reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence'" means "'more than a mere scintilla but less than a preponderance.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  The Application

Mr. Stinnett was born on October 21, 1958. AR 169. He did not complete high school. AR 40-41. He worked as a hook tender for a logging company for seventeen years. AR 42. His

last day of work was March 28, 2009. AR 194. He has been married to Sue Ann Stinnett

since 1981. AR 168.

Mr. Stinnett filed an application for Disability Insurance Benefits on May 13, 2011,

alleging disability beginning on June 29, 2009. AR 65. Mr. Stinnett alleges disability due to

constant pain in his right knee following knee replacement surgery; numbness in his right heel;

his left knee compensating for his right knee; lack of strength and agility; difficulty learning; and

body aches and pains. *Id.* The Commissioner denied his application initially and upon

reconsideration; thereafter, he requested a hearing before an Administrative Law Judge ("ALJ").

AR 94, 102, 105. An administrative hearing was held on January 28, 2013. AR 35. On

February 13, 2013, the ALJ found Mr. Stinnett not disabled. AR 17-30. Mr. Stinnett appealed the

ALJ's decision to the Appeals Council but the appeal was denied, resulting in the ALJ's

February 13, 2013 decision becoming the final order of the agency. AR 1. Mr. Stinnett now

seeks judicial review of that decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
        the listed impairments, the analysis continues. At that point, the ALJ must
        evaluate medical and other relevant evidence to assess and determine the
        claimant's "residual functional capacity" ("RFC"). This is an assessment
        of work-related activities that the claimant may still perform on a regular
        and continuing basis, despite any limitations imposed by his or her
        impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
        416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
        proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

PAGE 4 – OPINION AND ORDER

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began his opinion by noting that Mr. Stinnett met the insured status requirements of the Social Security Act through December 31, 2014. AR 22. The ALJ then applied the sequential process. At step one, the ALJ found that Mr. Stinnett had not engaged in substantial gainful activity since his alleged onset date of June 29, 2009. *Id.* At step two, the ALJ found that Mr. Stinnett had the following severe impairments: degenerative disc disease of the bilateral knees status post total right knee replacement; degenerative disc disease of the cervical spine with spondylosis; left shoulder pain/strain status post left distal clavicle fracture; obesity; borderline intellectual functioning/cognitive disorder NOS; major depressive disorder; generalized anxiety disorder; and reading disorder (by history). *Id.* The ALJ found that those impairments more than minimally affected Mr. Stinnett's ability to perform basic work activities. *Id.*

PAGE 5 – OPINION AND ORDER

At step three, the ALJ found that Mr. Stinnett did not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22-23. The ALJ found that Mr. Stinnett had a mild impairment in activities of daily living; a moderate impairment in social functioning; a moderate impairment in the area of concentration, persistence or pace; and no episodes of decompensation of extended duration. AR 23.

Next, the ALJ determined that Mr. Stinnett had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b). *Id.* The ALJ found that Mr. Stinnett had the capacity to do the following: (1) lift and carry up to twenty pounds occasionally and up to ten pounds frequently; (2) stand and walk a combined total of four hours in an eight-hour work day; (3) occasionally climb ramps and stairs, stoop, kneel, and crouch; (4) occasionally engage in pushing, pulling, and repetitive foot pedal operation with the right lower extremity; (5) occasionally reach overhead with his non-dominant left upper extremity; (6) have occasional exposure to extreme cold, vibration, and hazards such as moving machinery and unsecured heights; and (7) and have occasional contact with the public. AR 23-24. The ALJ found that Mr. Stinnett was capable of learning, remembering, and performing simple, routine, and repetitive one to three step work tasks, involving one to three step instructions, performed in a static work environment with few work place changes. AR 24. The ALJ also found that Mr. Stinnett could sit or stand at thirty to forty-five minute intervals for two to five minutes, during which he could remain on task; had to use a cane in his dominant hand at all times; could never climb ladders, ropes, or scaffolding; and could never crawl. *Id.*

In determining Mr. Stinnett's RFC, the ALJ considered Mr. Stinnett's testimony but found that Mr. Stinnett was not fully credible. AR 24-25. The ALJ gave little weight to the

December 2011 assessment of Dr. Rinehart, Mr. Stinnett's treating physician. AR 26. The opinions of several State Agency disability consultants were given some weight. AR 27. The ALJ gave minimal weight to the written lay testimony of Sue Ann Stinnett. *Id.*

At step four, the ALJ found that Mr. Stinnett was unable to perform any past relevant work. AR 28. At step five, the ALJ relied on the testimony of a vocational expert ("VE") and found that based on Mr. Stinnett's age, education, work experience, and RFC, he could perform the requirements of representative occupations such as bench assembler, cashier II/booth parking lot, and photo copier. AR 29. The ALJ relied on the VE's testimony that these occupations are available in significant numbers in the national economy. *Id.* In sum, the ALJ concluded that Mr. Stinnett was not disabled. *Id.*

## DISCUSSION

Mr. Stinnett seeks review of the ALJ's determination that he is not disabled. Mr. Stinnett argues that the ALJ erred in making his determination by: (1) rejecting Dr. Rinehart's opinion; (2) finding Mr. Stinnett's testimony not fully credible; (3) rejecting Sue Ann Stinnett's lay witness testimony; (4) improperly formulating the RFC; and (5) not supporting his step-five determination with substantial evidence.

### A.  Dr. Rinehart's Opinion

Mr. Stinnett argues that the ALJ improperly rejected Dr. Rinehart's opinion. The opinion of treating physicians is generally given more weight than those of examining and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is not contradicted by that of another doctor, it can only be rejected for "'clear and convincing' reasons." *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). If a treating physician's opinion is contradicted by another doctor, it can only be rejected for "'specific and legitimate reasons.'" *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The ALJ gave little weight to Dr. Rinehart's December 2011 opinion. AR 26. The ALJ provided two reasons for doing so: (1) the December 2011 opinion was inconsistent with Dr. Rinehart's other recorded observations; and (2) it lacked support in the medical record. *Id.*[1] The ALJ did not find that Dr. Rinehart's December 2011 opinion was contradicted by that of another doctor, but found that it was contradicted by Dr. Rinehart's 2012 opinion. As discussed further below, the Court does not agree that Dr. Rinehart's 2012 opinion contradicts his 2011 opinion. Thus, the Court applies the clear and convincing standard.

### 1. Dr. Rinehart's recorded observations

Dr. Rinehart stated in his December 2011 opinion that Mr. Stinnett could lift and carry up to ten pounds occasionally; could sit for three hours, stand for one hour, and walk for one hour in an eight-hour workday, while spending the remaining three hours in a recliner or bed; could never reach, push, or pull; required the use of a cane when walking more than fifty feet; and could not sort, handle, or use paper or files. AR 414-19. Dr. Rinehart found that Mr. Stinnett could never climb stairs, ramps, ladders, or scaffolds; balance; stoop; kneel; crouch; or crawl. AR 417. Dr. Rinehart stated that Mr. Stinnett could perform activities like shopping, care for personal hygiene, and prepare a simple meal. AR 419.

The ALJ found that the December 2011 opinion was inconsistent with Dr. Rinehart's November 2012 opinion. AR 26. A discrepancy between a doctor's opinion and his other recorded observations may be a "clear and convincing reason" to reject that doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In November 2012, Dr. Rinehart found

---

[1] The ALJ also commented on the possibility that Dr. Rinehart's medical opinion was inappropriately influenced by sympathy for Mr. Stinnett. AR 26 ("While difficult to confirm, the possibility always exists that a doctor may express an opinion in an effort to assist an individual with whom he or she sympathizes for one reason or another."). The Commissioner concedes that this comment was improper.

that Mr. Stinnett could no longer be a logger or do heavy work, but was "[n]ot educated for less demanding jobs." AR 430-31. The ALJ asserted that this statement "seems to imply the claimant could do at least light work and work not requiring more than understanding and carrying out simple tasks and instructions." AR 26. The ALJ found that this implication was in conflict with Dr. Rinehart's December 2011 determination that Mr. Stinnett was limited to less than sedentary work activity. *Id.* A doctor's statement that a patient is no longer able to perform his former work is not necessarily an endorsement of that patient's ability to perform in a less demanding work environment. Thus, Dr. Rinehart's November 2012 statement that Mr. Stinnett could no longer do heavy work is not in conflict with the December 2011 opinion.

The ALJ also concluded that the December 2011 opinion was "entirely inconsistent" with Dr. Rinehart's treatment notes. AR 26. The ALJ noted that on numerous occasions, Dr. Rinehart observed that Mr. Stinnett was stable and functional on his current pain medication regimen and was able to do all his activities of daily living, such as caring for his grandchildren, engaging in therapeutic bike riding, and shopping. AR 25. These observations, however, are not in conflict with Dr. Rinehart's December 2011 opinion. The December 2011 opinion specifically found that Mr. Stinnett was capable of shopping, preparing a simple meal, and caring for his personal hygiene. Further, the ability to ride a bike for rehabilitation therapy is not necessarily inconsistent with the limitations Dr. Rinehart described in his December 2011 opinion.

The ALJ also cited to several of Dr. Rinehart's observations that Mr. Stinnett has "normal gait and station, and normal movement of all extremities" as conflicting with Dr. Rinehart's December 2011 opinion. AR 26. Yet Dr. Rinehart's December 2011 opinion found that Mr. Stinnett was capable of walking up to fifty feet without a cane. AR 419. Those two

conclusions are not inconsistent. Dr. Rinehart's December 2011 opinion is not contrary to his other recorded observations.

### 2. The medical record

The ALJ also summarily concluded that Dr. Rinehart's December 2011 opinion "finds very little support in the available medical record." AR 26. The ALJ provided no discussion on this point. The Commissioner argues that the ALJ was referring to Dr. Rinehart's December 2011 claim that Mr. Stinnett required the use of a cane when walking for more than fifty feet. The Commissioner's argument is not persuasive. In June of 2011, Mr. Stinnett reported that though he was not using a cane, he could not walk very far without stopping to rest because of his knee pain. AR 213-15. And during an August 2011 psychological assessment, the examining physician stated that Mr. Stinnett exhibited pain behavior by walking with a limp and grimacing with pain. AR 325. Because Dr. Rinehart's December 2011 opinion is supported by the medical record and is not inconsistent with his other recorded observations, the ALJ failed to identify a clear and convincing reason, supported by substantial evidence, for giving the December 2011 opinion only little weight.

## B. Mr. Stinnett's Credibility

Mr. Stinnett challenges the ALJ's finding that Mr. Stinnett was only partially credible. The Ninth Circuit has a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullival*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, the claimant "need not show that her impairment could reasonably be expected

to cause the severity of the symptom she has alleged; she need only show that it could reasonably

have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282

(9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing

standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*,

759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*,

278 F.3d 920, 924 (9th Cir. 2002)). It is "not sufficient for the ALJ to make only general

findings; he must state which pain testimony is not credible and what evidence suggests the

complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons

must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not

arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750

(9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d

at 1284. The Commissioner recommends assessing the claimant's daily activities; the location,

duration, frequency, and intensity of the individual's pain or other symptoms; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other

than medication, the individual receives or has received for relief of pain or other symptoms; and

any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 46 F.3d 880, 883 (9th Cir. 2006).

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1997 (9th Cir. 2004).

The ALJ, applying the first step of the credibility framework, found that Mr. Stinnett's medically determinable impairments could reasonably be expected to cause "*some*" of Mr. Stinnett's alleged symptoms and that Mr. Stinnett was credible "to the extent he suffers from *some* severe impairments." AR 24 (emphasis added). The ALJ did not specify which of Mr. Stinnett's alleged symptoms and impairments he was crediting and which he was not. In applying the second step, the ALJ found that Mr. Stinnett's allegations concerning the severity of his impairments and their effect on his ability to perform basic work tasks were less than fully credible. AR 25.

The ALJ offered two reasons for finding Mr. Stinnett only partially credible: (1) Mr. Stinnett's daily living activities were inconsistent with his claim of disability; and (2) Mr. Stinnett's work history calls "into question the credibility of his allegations." AR 25.

### 1.   Daily living activities

The ALJ found that Mr. Stinnett's daily living activities were "not limited to the extent one would generally expect of a disabled individual." AR 25. Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639; *Molina*, 674 F.3d at 1112-13. For a credibility analysis, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'" *Whittenberg v. Astrue*, 2012 WL 3922151, at * 4 (D. Or. Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Denton v. Astrue*, 2012 WL 4210508, at * 6 (D. Or. Sept. 19, 2012) ("While [the claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations.").

A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations in order to be relevant to his or her credibility). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing cases).

The ALJ found that Mr. Stinnett's claims of physical limitations were inconsistent with reports he made to treatment providers about his regular physical activities, particularly his

therapeutic bike riding. AR 25. The ALJ noted that Mr. Stinnett repeatedly told his treatment

providers that he was riding his bike for physical therapy up to twenty miles per day after his

knee replacement. *Id.* At the hearing, however, Mr. Stinnett clarified that he exaggerated the

extent to which he was riding his bike for therapeutic purposes. AR 51 ("Well, that's what I told

him [Dr. Rinehart] I was doing, but I really wasn't doing it that far."). Mr. Stinnett also clarified

that he would predominately use his left leg and let the right leg float when riding his bike for

rehabilitation. AR 52. Looking at the record as a whole, the Court finds that Mr. Stinnett

provided a reasonable explanation, which the ALJ failed to address, for why Mr. Stinnett's

reports of therapeutic bike riding were not inconsistent with his claims of physical limitations.

Those reports are thus not a clear and convincing reason to discredit Mr. Stinnett's subjective

symptom testimony. Further, although Mr. Stinnett's admitted exaggeration to his doctor

regarding the amount of exercise and physical therapy Mr. Stinnett was performing may

diminish his credibility, that admission was not a reason cited by the ALJ.

The ALJ also found that Mr. Stinnett's ability to care for his personal grooming and

hygiene, cook and prepare meals, do yard work, run errands, and care for his grandsons was

inconsistent with his claim of physical limitations. AR 25. An ALJ, however, may not penalize

disability claimants "for attempting to lead normal lives in the face of their limitations."

*Reddick*, 157 F.3d at 722. Engaging in activities such as light household chores, preparing simple

meals, and grocery shopping do not weigh against a plaintiff's credibility. *Vertigan*, 260 F.3d at

1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain

daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not

in any way detract from her credibility as to her overall disability. One does not need to be

'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Mr. Stinnett reported that he makes himself sandwiches once a day for lunch. AR 211. He is unable to stand in one spot long enough to cook and prepare a more complicated meal. *Id.* He tries to do yard work a couple of times a week, but can only clip a few blackberry "stickers" before he has to stop. AR 212. He does sometimes go grocery shopping with his wife, but "not very often." *Id.* Mr. Stinnett does not cook, clean, or do laundry. AR 326. This level of minor activity does not contradict Mr. Stinnett's claims regarding his limitations. *See Vertigan*, 260 F.3d at 1050. Thus, Mr. Stinnett's daily living activities do not constitute a clear and convincing reason, supported by substantial evidence, for discounting his credibility.

### 2. Work history

The ALJ also found that Mr. Stinnett's work history called into question his subjective symptom testimony. AR 25. The ALJ gave three reasons in support of this finding: (a) Mr. Stinnett's onset date corresponded to the date of his layoff; (b) many of Mr. Stinnett's alleged impairments were present prior to his onset date; and (c) Mr. Stinnett was receiving unemployment benefits and looking for work after his layoff but before filing for disability benefits. *Id.* The Commissioner concedes that the ALJ erroneously relied on Mr. Stinnett's receipt of unemployment benefits as a factor weighing against Mr. Stinnett's credibility.

### a. Alleged Onset Date

The ALJ asserted that "[w]hen asked to explain his alleged onset date, the claimant responded during the hearing that he was 'laid off' from work." AR 25. The ALJ's assertion is incorrect—Mr. Stinnett expressed confusion about the significance of the June 29, 2009 date at the hearing. The exchange went as follows:

Q: What date, what does the date June 29, 2009 represent to you, is that the last day you worked or what does that date mean?

A: June 29, 2009?

Q: Yes.

A: I don't know, I don't know if that's when I had my surgery or the last day I worked.

Q: Okay.

A: Is it?

AR 50. According to Mr. Stinnett's Initial Disability Determination Explanation, June 29, 2009 represents his alleged onset date, and the last date he worked was March 28, 2009. AR 66. Notably, June 29, 2009 was the date of Mr. Stinnett's knee replacement surgery, suggesting that it was his knee surgery that triggered his onset date. Thus, Mr. Stinnett's alleged onset date is not the date he was laid off and the ALJ erroneously concluded otherwise.

### b. Presence of impairments prior to onset date

The ALJ asserted that many of Mr. Stinnett's impairments were present prior to his alleged onset date of June 29, 2009, suggesting that he had been performing work adequately despite those impairments. AR 25. The medical record indicates, however, that Mr. Stinnett's alleged disability predominately stems from his June 29, 2009 knee replacement surgery. In Mr. Stinnett's May 26, 2011 disability report, six out of the nine physical and mental conditions that Mr. Stinnett claimed limited his ability to work related to his knee replacement surgery. AR 194. And on his June 29, 2011 function report, Mr. Stinnett stated that he could no longer work following his knee replacement surgery. AR 209. The fact that the ALJ found that Mr. Stinnett also suffered from a variety of other severe impairments, including degenerative disc disease of the cervical spine, left shoulder pain and strain due to a fracture, and borderline

intellectual functioning, does not contradict the Mr. Stinnett's testimony that his knee surgery caused his inability to return to work. AR 22.

The ALJ also stated that "[t]here are no allegations or evidence in the record that the claimant was terminated from his employment as a result of any alleged disability or that his job was sheltered or accommodated work." AR 25. Mr. Stinnett's hearing testimony, however, does suggest that he was having difficulty performing his work duties at the time of his dismissal. The logging company transitioned Mr. Stinnett from heavy work to a lighter job before finally laying him off. AR 49. Mr. Stinnett's supervisor told him that in order for Mr. Stinnett to come back to work, the logging company would have to buy new equipment to accommodate Mr. Stinnett's impairments. AR 50. Mr. Stinnett's testimony, therefore, is evidence that he was not performing his work adequately at the time of his layoff. Moreover, Mr. Stinnett was laid off months before his knee surgery and thus even if he could adequately perform work at the time of his layoff, that would not show that he could adequately perform work after his knee surgery such as to undermine Mr. Stinnett's testimony regarding his limitations. Finally, the ALJ specifically concluded that Mr. Stinnett could not perform his past relevant work, so Mr. Stinnett's testimony regarding his limitations with respect to his past work is consistent with the ALJ's own findings.

### c.  Seeking employment before filing for disability

Mr. Stinnett applied for jobs while he was drawing unemployment through the first part of 2012. AR 50-51. Seeking employment, however, is not necessarily inconsistent with disability allegations. *See Lopez v. Massanari*, 23 F. App'x 667, 669-70 (9th Cir. 2001) (concluding that claimant's search for work was not a clear and convincing reason to reject her testimony). Mr. Stinnett applied mostly for logging jobs because "he thought he could try it," but when he attempted to work, he only lasted a day and a half because it was too painful. AR 51; AR 323.

Mr. Stinnett's failed attempt at returning to fulltime work is consistent with his symptom testimony.

Mr. Stinnett's work history does not call into question the credibility of his allegations. None of the reasons relied on by the ALJ related to Mr. Stinnett's work history are clear and convincing reasons, supported by substantial evidence, to reject his subjective symptom testimony.

## C.  Sue Ann Stinnett's Lay Witness Testimony

Mr. Stinnett argues that the ALJ improperly weighed the written lay testimony of his wife, Sue Ann Stinnett. Social Security regulations require the ALJ to consider all relevant evidence. 20 C.F.R. § 416.945(a)(3). This includes evidence submitted by family members. 20 C.F.R. § 404.1513(d)(4); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[W]e have held that friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). Opinions from lay witnesses, such as family members, may be accorded less weight than opinions from acceptable medical sources. *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). An ALJ, however, may not disregard lay witness testimony "unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An inconsistency between the medical evidence and a lay witness's testimony is a germane reason to discredit such testimony. *Bayliss*, 427 F.3d at 1218.

The ALJ gave minimal weight to the written lay testimony of Sue Ann Stinnett. AR 27. Sue Ann Stinnett submitted a third-party function report on June 15, 2011. AR 201. Her report stated that Mr. Stinnett did not fully recover from his knee surgery. *Id.* She stated that Mr. Stinnett still had a lot of pain with the knee and often woke up at night because of that pain. *Id.* She stated that Mr. Stinnett could not get in and out of his chair very well, and that he could

PAGE 18 – OPINION AND ORDER

not "do much of anything" other than sit in the chair. AR 201-02. Mr. Stinnett was able to

perform personal care and hygiene, though sometimes he had trouble putting on his socks. AR

202. Mr. Stinnett was able to make himself sandwiches for lunch while she was at work. AR

203. Mr. Stinnett rode his bike for physical therapy even though "it hurt[ ] him." AR 204. Sue

Ann Stinnett noted that Mr. Stinnett could walk for no longer than five minutes before needing to

stop and rest. AR 206.

 The ALJ gave minimal weight to Sue Ann Stinnett's June 2011 report, asserting that it

was inconsistent with the medical record. AR 27. The ALJ provided no discussion on this point.

The Commissioner argues that Sue Ann Stinnett's statement that Mr. Stinnett could walk for no

longer than five minutes before needing to stop and rest was in conflict with an emergency room

visit in which Mr. Stinnett had a "steady gait." AR 287. The emergency room report, however,

does not state for how long Mr. Stinnett walked.

 The Commissioner also argues that Sue Ann Stinnett's June 2011 statement is

inconsistent with Mr. Stinnett's testimony at the January 2013 hearing, as he told the ALJ that he

could walk around for "probably 20 minutes, half hour, maybe." AR 45. Sue Ann Stinnett's

June 2011 report is consistent, however, with Mr. Stinnett's June 2011 report stating that he

could only walk for five minutes before needing to stop and rest. AR 214. The fact that

Mr. Stinnett was able to walk for about fifteen additional minutes one and a half years later does

not mean that Sue Ann Stinnett's statement lacks credibility.

 The ALJ also gave minimal weight to Sue Ann Stinnett's report because "her opinions

appear to be colored by an affection for the claimant" and she had a "possible lack of motivation

to offer an objective assessment." AR 27. The ALJ did not provide any evidence to support these

assertions. The mere fact that a lay witness is an "interested party" is not sufficient to reject that

witness's testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694

(9th Cir. 2009) ("[I]nsofar as the ALJ relied on characteristics common to all spouses, she ran

afoul of our precedents. . . . [E]vidence that a specific spouse exaggerated a claimant's symptoms

*in order* to get access to his disability benefits, as opposed to being an 'interested party' in the

abstract, might suffice to reject that spouse's testimony."). Though a lay witness's close

relationship with the claimant, when combined with inconsistency with the medical record, is a

germane reason for discounting the witness's testimony, *see Grisel v. Colvin*, 2014 WL 1315894,

at *15 (C.D. Cal. April 2, 2014), Sue Ann Stinnett's June 2011 third-party function report is not

inconsistent with the medical record. Thus, the ALJ failed to provide a germane reason for

giving her statements only minimal weight.

**D.  The RFC Formulation**

Mr. Stinnett argues that the ALJ committed reversible error by failing to include all of his

impairments in the RFC. The RFC is the most that a claimant can do despite his or her

limitations. 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ must consider

limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ

evaluates "all of the relevant medical and other evidence," as well as a claimant's testimony, in

making this assessment. SSR 96-8p; 20 C.F.R. § 404.1545(a)(1); *see also Robbins v. Soc. Sec.

Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

In this case, the ALJ did not provide legally sufficient reasons for discrediting

Mr. Stinnett's subjective symptom testimony, Dr. Rinehart's December 2011 opinion, and Sue

Ann Stinnett's written lay witness testimony. Mr. Stinnett and Dr. Rinehart testified to

limitations that the ALJ did not include in the RFC. For example, Mr. Stinnett reported that he

was unable to kneel or squat, AR 209, but the ALJ found that Mr. Stinnett was capable of

kneeling and crouching occasionally, AR 24. Additionally, Dr. Rinehart stated that Mr. Stinnett

was capable of standing and walking for a combined total of two hours in an eight-hour workday, AR 415, but the ALJ found that Mr. Stinnett could stand and walk a combined total of four hours in an eight-hour workday, AR 23. Because the RFC does not account for the additional limitations that Mr. Stinnett and Dr. Rinehart described, the RFC assessment is erroneous.

## E.  The Step-Five Determination

Mr. Stinnett argues that the ALJ's step-five determination is invalid because the ALJ failed to include all of Mr. Stinnett's limitations in the hypotheticals posed to the VE. An ALJ may rely on a VE's response to vocational hypotheticals when determining a claimant's disability. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). If the hypothetical posed to the VE does not reflect all of the claimant's properly supported limitations, however, the VE's opinion lacks evidentiary value. *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993). In this case, because the ALJ erred in disregarding the testimony of Mr. Stinnett, Dr. Rinehart, and Sue Ann Stinnett, the hypothetical given to the VE did not include all of Mr. Stinnett's restrictions and limitations. Thus, the hypothesis was invalid and the VE's testimony has no evidentiary value.

## F.  Credit as True and Remand

Mr. Stinnett argues that the Court should credit Dr. Rinehart's December 2011 assessment, Mr. Stinnett's subjective symptom testimony, and Sue Ann Stinnett's written lay witness testimony as true and remand for an award of benefits.

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). It was recently described by the United States Court of Appeals for the Ninth Circuit:

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled"). Moreover, when remanding for further development of the record, the district court has the

PAGE 22 – OPINION AND ORDER

discretion to remand on an open record or with the directive that the claimant's testimony be credited as true. *See Burrell*, 775 F.3d at 1141 (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings") (citing *Garrison*, 759 F.3d at 1021).

As explained above, the ALJ failed to provide legally sufficient reasons for giving little weight to Dr. Rinehart's December 2011 opinion, finding Mr. Stinnett partially credible, and giving minimal weight to Sue Ann Stinnett's written lay testimony. Mr. Stinnett argues that had the ALJ properly credited this testimony, a finding of disability would be required under the medical-vocational guidelines because Mr. Stinnett was approaching advanced age at all relevant times, had limited education, and his previous work experience was unskilled and without transferable skills. *See* 20 C.F.R. § 404, Subpt. P, App'x 2. The VE testified, however, that Mr. Stinnett's previous work *was* skilled. AR 57. Nor has it been shown that Mr. Stinnett does not have transferable skills. Even crediting the improperly discounted testimony as true, the evidence does not indicate that Mr. Stinnett meets the medical-vocational guidelines and outstanding issues remain.

Additionally, although Mr. Stinnett's counsel posed a hypothetical to the VE that included some of the limitations described by Dr. Rinehart, counsel also added additional limitations not supported by Dr. Rinehart's opinion. AR 62-63. Thus, the implications of properly crediting the testimony of Dr. Rinehart, Mr. Stinnett, and Sue Ann Stinnett are unknown.

Upon remand, the ALJ shall accept as true Dr. Rinehart's December 2011 opinion, Mr. Stinnett's subjective symptom testimony, and Sue Ann Stinnett's lay witness testimony. The ALJ shall formulate a new RFC and consider whether medical-vocational guidelines apply. If the

medical-vocational guidelines do not apply, the ALJ shall determine whether work exists in significant numbers in the national economy for a person with Mr. Stinnett's limitations.

## CONCLUSION

The Commissioner's decision that Mr. Stinnett is not disabled is REVERSED and this case is REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 29th day of September, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
